FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In the matter of | : | Case No. 00-2691 to 00-2842 |
| | | **(Jointly Administered)** |
| Genesis Health Ventures, Inc. | : | |
| Debtors | : | |
| _____ | : | |
| Richard Haskell, et al. | : | |
| Plaintiffs | : | **AMENDED** |
| | | **OPINION ON JOINT** |
| | | **MOTION TO DISMISS** |
| v. | : | |
| Goldman, Sachs & Co.; Genesis Health Ventures, Inc.; Mellon Bank, N.A.; Highland Capital Management, L.P.; George V. Hager | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

APPEARANCES:   R. Bruce McNew, Esq.
Taylor & McNew LLP
3711 Kennett Pike, Suite 210
Greenville, Delaware  19807
Counsel for Plaintiffs

H. Adam Prussin, Esq.
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, New York  10017
Counsel for Plaintiffs

Russell C. Silberglied, Esq.
Richards, Layton & Finger, P.A.
P.O. Box 551, One Rodney Square
Wilmington, Delaware  19899
Counsel for NeighborCare, Inc.

Michael F. Walsh, Esq.
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, New York 10153
Counsel for NeighborCare, Inc.

Steven K. Kortanek, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, Delaware  19809-3062
Counsel for Goldman, Sachs & Co.

Barry Sher, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004-1980
Counsel for Goldman, Sachs & Co.

Daniel K. Hogan, Esq.
1701 Shallcross Avenue, Suite C
Wilmington, Delaware  19806
Counsel for Highland Capital Mgmt, LLP

Robert S. Brady, Esq.
Young, Conaway, Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19899-0391
Counsel for George V. Hager

Menachem O. Zelmanovitz, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
Counsel for Mellon Bank

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE   19801
Counsel for Mellon Bank

**HONORABLE JUDITH H. WIZMUR:**
(U.S. Bankruptcy Court, District of New Jersey, Sitting by Designation)

The defendants jointly move to dismiss the plaintiffs' complaint in its entirety because it is time-barred under section 1144, because it violates the order of confirmation, because it is barred by the doctrines of res judicata and/or collateral estoppel, and because it fails to assert a claim for fraud with specificity as required by Rule 9(b). I conclude that plaintiffs' complaint as against the debtor is barred by operation of section 1144 and the order of confirmation, and must therefore be dismissed. Plaintiffs' complaint as against the remaining defendants is barred by the doctrines of res judicata and collateral estoppel. The defendants' motion is granted, and the complaint is dismissed in its entirety.

## FACTS

The Genesis Health Ventures, Inc. ("Genesis") and Multicare AMC, Inc. ("Multicare") debtors filed separate Chapter 11 bankruptcy cases on June 22, 2000. The debtors' Joint Plan of Reorganization was filed on July 6, 2001 and confirmation hearings were held on August 28 and 29, 2001. Debtors' plan was confirmed on September 12, 2001 by written opinion. See In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D.Del. 2001), appeal dismissed,

280 B.R. 339 (D.Del. 2002).

Two and a half years later, plaintiffs filed this complaint on January 24, 2004 in the Supreme Court for the State of New York.  The complaint was removed to the United States District Court for the Southern District of New York, transferred to the United States District Court for the District of Delaware, and then referred to the Delaware bankruptcy court.

The plaintiffs are comprised of 275 investors who, on October 2, 2001, collectively held 55% of all debentures ("Senior Subordinated Notes") issued by Genesis, with a face value in excess of $205 million.  The debentures were subordinated to about $1.3 billion in senior debt.  Defendant Goldman Sachs & Co. purchased about half of the Genesis senior debt participations shortly before the debtors' bankruptcy filings.  Goldman became the largest senior creditor of both Genesis and Multicare, and served as the underwriter for the DIP and exit financing.

Plaintiffs allege that Goldman, Highland Capital Partners, another senior debt participant, and Mellon Bank N.A., the debtors' lead senior lender bank, ("Senior Lenders") "conspired with Genesis management to put the Company into bankruptcy and 'cram down' a reorganization plan that would eliminate

-4-

junior creditors (including plaintiffs) and existing stockholders, while conveying virtually total ownership of Genesis to the senior creditors."  Complaint at 8. The confirmed plan merged Genesis and Multicare, extinguished the Old Common Stock of both companies, and distributed about 94% of the newly issued stock of the reorganized, combined entities to the Senior Lenders.  The junior creditors, including the Genesis Senior Subordinated Note claimants, received an approximate dividend of 7.34%, plus New Warrants.

Plaintiffs allege that the enterprise value of Genesis was misrepresented at confirmation as being about $1.3 billion.  The enterprise value was based on a multiple of the Genesis budgeted EBITDA (earnings before interest, taxes, depreciation, and amortization) for 2001, which was projected at $158 million, down from between $205 and $210 million for the fiscal years 1998 and 1999. In August 2001, shortly before the confirmation hearing, the debtor presented its historical LTM EBITDA (last twelve months EBITDA) for the preceding 12 month period, which supported the $158 million projection.  Plaintiffs contend that "both the Budgeted EBITDA projections and the LTM EBITDA were 'cooked', to depress EBITDA and thereby depress the valuation of Genesis." Complaint at 11.  Because the LTM EBITDA was presented only six days prior to the confirmation hearing, plaintiffs complain that they were unable to challenge the EBITDA in a timely manner.

Plaintiffs assert causes of action for fraud, conspiracy to commit fraud and gross negligence.  More specifically, plaintiffs assert in Count One of their complaint that

> Genesis and Hager [the Chief Financial Officer of Genesis] were directly involved in the preparation of all the misleading financial information that led to the under-valuation of Genesis.
>
> Goldman, Mellon and Highland controlled this entire process, periodically reviewing in detail the financial information prepared by Genesis management on a monthly basis, to assure that EBITDA data were matching the 'target' of about $158 million, and that sufficient adjustments were being made to the budgeted EBITDA to bring about the same result.  They offered enormous financial inducements to Genesis management to perpetrate this fraud, and they were the principal beneficiaries of the fraud. Goldman also took all the steps needed to freeze MC's cash and lines of credit so that it could not pay its obligations to Genesis, thus forcing Genesis to draw down almost $200 million from its DIP lending facility.

Complaint at ¶¶ 184, 185.  In support of these allegations, plaintiffs contend that Genesis management improperly decreased the debtors' EBITDA by deducting a host of unsubstantiated and unwarranted items.

In Count Two, plaintiffs allege that

> Goldman, Mellon and Highland were aware that the financial information being released by Genesis, and upon which the reorganization valuation of the Company would be determined, was false and misleading and had been designed to defraud the junior creditors of Genesis, and would be relied upon by the plaintiffs and the Court.

> Goldman, Mellon and Highland conspired with, orchestrated and
> rewarded Genesis and its management, and in particular
> defendant George Hager, for perpetrating this fraud.

Complaint at ¶¶ 191, 192.  In Count Three, plaintiffs allege that

> By virtue of their positions as debtor in a bankruptcy proceeding,
> as the chief financial officer of the debtor, as senior creditors of the
> debtor, and as proponents of a bankruptcy reorganization plan
> that would drastically affect the junior creditors, defendants owed
> the junior creditors of Genesis a duty of care, including the duty to
> provide fair, accurate and complete information.
>
> Defendants violated that duty of care by disseminating false and
> misleading financial information that misled the bankruptcy court
> and the plaintiffs concerning the true financial condition and
> prospects of Genesis.  Defendants' conduct was such an extreme
> and severe departure from due care as to constitute gross
> negligence, and was therefore not released as a result of the
> Genesis bankruptcy.

Complaint at ¶¶ 195, 196.  Plaintiffs believe that if Genesis had been properly

valued, there would have been sufficient value for the subordinated debenture

holders to recover the full par value of their debentures.  They seek an award of

damages in an amount not less than $200 million, plus interest, costs and

fees.

Defendants view plaintiffs' complaint as another attempt to alter the

distribution to creditors provided for under the debtors' confirmed Chapter 11

plan.  Allowing the plaintiffs a recovery against the debtors in this action

"would have the direct effect of diluting the value of its common stock distributed to its former senior creditors, and a judgment against the Senior Lenders named in this suit would have the effect of transferring distributions made to them under Plan into the hands of the subordinated debentureholders."  Motion to Dismiss at 4.

## DISCUSSION

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of a complaint for failure to state a claim upon which relief may be granted, is available to defendants in adversary proceedings filed in bankruptcy cases.  To determine such a motion, the court must accept all of the facts pleaded in the complaint as true, and draw all reasonable inferences in plaintiff's favor.  In re Great Atlantic & Pacific Tea Co., Inc. Securities Litigation, 103 Fed.Appx. 465, 467-68 (3d Cir. 2004); Mele v. Federal Reserve Bank of New York, 359 F.3d 251, 253 (3d Cir. 2004); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000), cert. denied, 532 U.S. 1038, 121 S. Ct. 2000, 149 L.Ed.2d 1003 (2001).  The focus of the court on a 12(b)(6) motion "is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief."  Simon v. Cebrick, 53 F.3d 17, 19 (3d Cir. 1995).  See also Haynes v. Metropolitan Life Ins. Co., 94

Fed.Appx. 956, 958 (3d Cir. 2004) (court "may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

On this joint motion to dismiss the plaintiffs' complaint in its entirety, the defendants contend that no relief could be granted under any set of facts that could be proved consistent with the allegations because the plaintiffs' complaint:

> (1) is time-barred under 11 U.S.C. § 1144;
>
> (2) violates the order of confirmation and discharge injunction;
>
> (3) is barred by the doctrine of res judicata;
>
> (4) is barred by the doctrine of collateral estoppel, and
>
> (5) fails to assert a claim for fraud with specificity as required by Fed.R.Civ.P. 9(b).

### I.   Plaintiffs' Complaint is Time-Barred Under 11 U.S.C. § 1144

The Confirmation Order approving the debtors' reorganization plan was entered on September 12, 2001.  The plaintiffs' complaint was filed on January 24, 2004.

Section 1144 provides that, "[o]n request of a party in interest at any time before 180 days after the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."  11 U.S.C. § 1144.  This six month time limitation is strictly construed, and courts have enforced the bar even where fraud is later discovered beyond the deadline.  See, e.g., In re Midstate Mortgage Investors, Inc., 105 Fed.Appx. 420, 423 (3d Cir. 2004); In re Orange Tree Assocs., Ltd., 961 F.2d 1445, 1447 (9th Cir. 1992) ("courts have held uniformly that strict compliance with section 1144 is a prerequisite to relief"); In re Space Bldg. Corp., 206 B.R. 269, 273 (D.Mass. 1996).  The allegation by the plaintiffs that they had insufficient opportunity to uncover the fraud prior to the confirmation of the debtors' plan, and only discovered the alleged fraud by various means after the expiration of the six month limitation, does not alter the effectiveness of the bar here.

Instead, the threshold question is whether the plaintiffs' quest for money damages from the debtors and the other defendants, based on allegations of pre-confirmation fraud, constitutes a collateral attack on the confirmation order, which would be time-barred, or whether it represents a separate cause of action against the various defendants, which is not proscribed by § 1144.

On its face, the statute pertains only to the revocation of a confirmation order procured by fraud.  Some courts have viewed fraud allegations seeking monetary damages, made against the debtor and others associated with a confirmed plan of reorganization, to constitute an impermissible collateral attack on a debtor's reorganization which would "allow [the plaintiffs] to do indirectly what they no longer may do directly because of 11 U.S.C. § 1144." Hotel Corp. of the South v. Rampart 920, Inc., 46 B.R. 758, 770-71 (E.D. La. 1985), aff'd, 781 F.2d 901 (5th Cir. 1986).

Other courts adopt a more nuanced approach to the applicability of § 1144, examining whether the case involves an attempt to "'redivide the pie' by a disgruntled participant in the Plan," or whether the relief sought would upset the confirmed plan.  In re Coffee Cupboard, Inc., 119 B.R. 14, 19 (E.D.N.Y. 1990) (citing to In re Emmer Bros. Co., 52 B.R. 385, 392 (D. Minn. 1985)).  If a judgment awarding the plaintiff money damages would not ultimately affect the plan distributions made to the creditor body, the cause of action premised on fraud may proceed.  For example, in In re Circle K Corp., 181 B.R. 457 (Bankr. D. Ariz. 1995), the complaint alleged improper conduct, defective disclosures and erroneous valuation information in connection with the confirmation of the debtor's plan of reorganization.  The court determined that although the plaintiffs were clearly "disgruntled creditors", Id. at 462, the cause of action

may proceed because "the Court can fashion a remedy that does not upset the confirmed plan, i.e., monetary damages." Id.  The court reflected that the remedies sought are intended "to redress harm and divest alleged tort-feasors of wrongfully obtained property, without affecting innocent parties and creditors." Id. at 459.  Similarly, in Emmer, an independent cause of action against the debtor premised on an undisclosed asset could proceed because an adjudication of the dispute would not upset the confirmed plan.  And in In re Crown-Globe, Inc., 107 B.R. 60 (Bankr. E.D. Pa. 1989), causes of action based on conversion, intentional misrepresentation and negligent misrepresentation survived a motion to dismiss based on § 1144, whereas a quest for equitable subordination did not.  The equitable subordination count sought to shift the priority of claims as they were paid under debtor's confirmed plan, and therefore represented an untimely attempt to revoke the confirmation of the debtor's Chapter 11 plan. Id. at 62.  The court concluded that the equitable subordination count was time barred under § 1144.

Applying these concepts to this case, I conclude that the plaintiffs' causes of action asserted against the debtor Genesis Health Ventures, Inc. must be dismissed as time-barred under 11 U.S.C. § 1144.[1]  Because money

---

[1]     The causes of action asserted against the other defendants, including the Senior Lenders and Hager, are discussed infra in the context of the applicability of the doctrines of res judicata and collateral estoppel.

damages, rather than a revocation of the confirmation order, are sought by the

plaintiffs against the debtor, it may appear at first blush that section 1144 does

not apply.  However, the impact of a significant money damages award against

the debtor would be to "redivide the pie", to upset the confirmed plan, and to

negatively affect innocent parties and creditors who received value in the forms

of new equity and new debt in the reorganized debtor.  Section 1144 was

designed to limit challenge to the viability of the reorganized entity emerging

from Chapter 11, to fix the liabilities of the reorganized debtor and to provide

certainty and finality to the confirmation process.

> [A] Chapter XI proceeding [is] focused towards rehabilitating a
> business, which if successful, is to the benefit of all persons who
> had dealings with the debtor.  Such plans are not easily devised,
> and once accomplished a short time for challenging such plan is
> necessary to keep alive the potential life of that business.
> Uncertainty of continued operations, injected by a Sword of
> Damocles in the form of fraud allegations which can be filed at any
> time in the future, would render meaningless the whole purpose of
> a Chapter XI proceeding.

In re Newport Harbor Assocs., 589 F.2d 20, 24 n.6 (1st Cir. 1978).[2]  See also In

re Orange Tree Assocs., Ltd., 961 F.2d 1445, 1447-48 (9th Cir. 1992).

---

[2]     In Newport Harbor, the court interpreted section 386 of the
Bankruptcy Act, 11 U.S.C. § 786 (1976) and Chapter XI Rule 11 - 41 of the
Rules of Bankruptcy Procedure.  Section 386 and Rule 11 - 41 are
substantively identical to section 1144 of the Bankruptcy Code.

-13-

I conclude that as to the debtor, the complaint is time-barred by operation of 11 U.S.C. § 1144.

II.   <u>Order of Confirmation, Discharge and Injunction</u>

An alternate ground for the dismissal of the causes of action asserted against the debtor is found in the discharge and injunction provisions contained in the debtors' confirmed plan of reorganization. <u>See</u> Order Confirming the Debtors' Joint Plan of Reorganization entered September 20, 2001. In paragraphs 10.2 and 10.3 of the debtors' plan of reorganization,[3] all

---

[3]     10.2. Discharge of Claims and Termination of Equity Interests.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan of Reorganization and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan of Reorganization, upon the Effective Date, all existing Claims against the Debtors and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest. . . .

10.3. Discharge of Debtors.

Upon the Effective Date and in consideration of the

-14-

claims against the debtors that occurred prior to the Effective Date were

discharged, and all claimants were permanently enjoined from prosecuting

such claims.

In the Order of Confirmation, a finding was entered that "the release,

exculpation and injunction provisions contained in the plan are fair and

equitable, are given for valuable consideration, and are in the best interests of

the debtors and their chapter 11 estates, and  such provisions shall be effective

and binding upon all persons and entities."  See Order of Confirmation,

September 20, 2001, ¶ 58a at 37.  While modification of the exculpation

provisions of the plan was required and accomplished, see, e.g., Exhibit B to

the Order of Confirmation detailing the required amendments, sections 10.2

and 10.3 of the plan remained intact and became effective.  The plaintiffs'

---

distributions to be made hereunder, except as otherwise expressly
provided herein, each holder (as well as any trustees and agents on
behalf of each holder) of a Claim or Equity Interest and any affiliate
of such holder shall be deemed to have forever waived, released,
and discharged the Debtors, to the fullest extent permitted by
section 1141 of the Bankruptcy Code, of and from any and Claims,
Equity Interests, rights and liabilities that arose prior to the
Effective Date.  Upon the Effective Date, all such persons shall be
forever precluded and enjoined, pursuant to section 524 of the
Bankruptcy Code, from prosecuting or asserting any such
discharged Claim against or terminated Equity Interest in the
Debtors.

Appendix of Exhibits to Defendants' Joint Motion to Dismiss, Exhibit K at 30.

contention, without specific citation, that the "Confirmed Plan expressly does not release any claim against the debtors for willful misconduct or gross negligence in <u>post</u>-petition matters"[4] is not substantiated.

The causes of action asserted by the plaintiffs against the debtor must be dismissed in their entirety on the ground that the final Order of Confirmation acts to discharge the reorganized debtor of all such claims, and enjoins the plaintiffs from prosecuting their claims.

III.    <u>Res Judicata</u>

Defendants Goldman, Mellon, Highland Capital and Hager seek to dismiss plaintiffs' complaint on the ground that it is barred by res judicata. They believe that the plaintiffs' "challenge to valuation and to the distribution to creditors that is central to the instant litigation is directly at odds with the Plan, and the claims Plaintiffs assert against the proponents of the Plan directly contradict the allocations determined by the Plan and the related determinations of enterprise value." Defs' Joint Reply at 6.

In response, plaintiffs contend that "[i]n the Third Circuit, the res

---

[4]     Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 53.

judicata doctrine is narrowly applied where the prior judgment was issued in a

bankruptcy proceeding." Memo in Opposition at 42 (citing to <u>Eastern Minerals</u>

<u>& Chems. Co. v. Mahan</u>, 225 F.3d 330, 337 (3d Cir. 2000)). They contend that

"[u]nder <u>Eastern Minerals</u> . . ., it is irrelevant what Plaintiffs could have done,

unless the claim that they actually litigated was the same as their current

claims: 'Claim preclusion only bars claims arising from the same cause of

action previously raised, not every conceivable claim that could have been

brought in the context of a bankruptcy case over which the court would have

had jurisdiction.'" Memo in Opposition at 46 (quoting 225 F.3d at 337). The

plaintiffs contend further that res judicata does not bar the complaint herein

because section 10.6 of the debtors' confirmed plan expressly reserves the

plaintiffs' right to sue designated parties for willful misconduct or gross

negligence in connection with the Chapter 11 process. Lastly, the plaintiffs'

invoke the fraud exception to res judicata to contend that the doctrine cannot

serve to bar this complaint.


Most, if not all, of the plaintiffs herein[5] vigorously litigated issues

involving the debtors' plan of reorganization prior to confirmation. Charles

---

[5]     The plaintiffs allege that as a group, prior to confirmation of the
debtors' reorganization plan, they held Genesis Senior Subordinated Notes with
a face value in excess of $205 million. Of that amount, Grimes held $20
million and GMS Group LLC, a brokerage firm, acted on behalf of holders of
$170-180 million during the confirmation process. <u>See</u> note 6 <u>infra</u>.

Grimes, a plaintiff in this action and holder of approximately $20 million in

subordinated debt, filed an objection to the adequacy of the debtors' Disclosure

Statement. He claimed that the debtors' Plan "grossly understate[d] the

enterprise value" of the debtors, and that "there is considerable value in

Genesis that the Plan and Disclosure Statement improperly and unjustifiably

conceal, release and ultimately strip away from holders of the Genesis 2005

Notes . . . for no consideration -- for the benefit of the Senior Lenders, the

Debtors' Officers and Directors, and the Multicare Creditors." Defs' Exh. A. at

4. He expressed "the concern that the Plan as proposed is only in the best

interest of the Senior Lenders and the Debtors' Officers and Directors - who

have an incentive to minimize assets and going concern value at this time so as

to enable them to capture all present and future value for themselves at the

expense of the Noteholders and general unsecured creditors." Id. at 3-4.


Grimes' concerns in this regard are repeated in his objection to the

confirmation of the debtors' plan, as a challenge to the good faith of the plan,

and as a challenge to the compliance by the plan with the fair and equitable

requirements of 11 U.S.C. § 1129(b). Defs' Exh. E at 5. Grimes referred to

allegations in a motion for the appointment of a trustee filed by the Multicare

Creditors' Committee, which was withdrawn prior to confirmation. The motion

contained allegations respecting the manner in which the Senior Lenders and

the debtors' officers and directors dealt with the debtors in the year prior to the filing of the petition and during the course of the debtors' bankruptcy cases and plan promulgation.  Defs' Exh. A at 5.  "These allegations raise significant concerns about conflict of interest, control over the Debtors and the plan process, potential fraudulent conveyance claims and the possibility that all or a portion of the claims of the Senior Lenders should be equitably subordinated.  While the Multicare Creditors' Committee has now withdrawn its Trustee Motion in exchange for a distribution under the Plan, that withdrawal does not moot these allegations."  Id. at 5-6.

Further, in his objection to confirmation, Grimes characterized

> [t]he central feature of the Plan [as] a dramatic misvaluation and undervaluation of the reorganized entity for purposes of Plan distributions.  As will be adduced through evidence to be presented at the Confirmation Hearing, the Plan and Disclosure Statement grossly understate -- and the Debtors employ incorrect methodologies to determine -- the enterprise value of the merged Reorganized Genesis and, hence, the value of the securities to be distributed under the Plan.  This results in ownership going overwhelmingly to the Senior Lenders, allowing them to capture for themselves the substantial upside potential that appropriately should be distributed equitably at the front end at confirmation for the benefit of all Genesis creditors.

> The Senior Lenders will recover more than 100% of their allowable claims, while junior creditors receive mere pennies on the dollar for their claims.

Defs' Exh. E at 2.

GMS Group LLC[6], which acted during the Genesis confirmation hearings

on behalf of holders of approximately $170 - $180 million in junior debt, filed a

similar objection to the debtors' Disclosure Statement, and received permission

from the court to include a letter in the debtors' solicitation package urging

creditors to vote against the plan.  On August 17, 2001, GMS filed its objection

to the debtor's Plan, contending that the debtors "significantly undervalued

their business enterprise by utilizing an unreasonably low EBITDA multiplier,

and applying this multiplier to an EBITDA that is undisputedly out of date."

Defendants' Exh. D at 3.  GMS urged that an "accurate and current EBITDA"

be used.  Id. at 4.  Responses to the Grimes and GMS objections were filed by

the debtors, the Senior Lenders and the Genesis Creditors' Committee.

The debtors' plan was filed on July 6, 2001.  Prior to confirmation

hearings on August 28 and 29, 2001, extensive discovery was conducted by

Grimes and GMS.  Six valuation experts exchanged reports, including two

experts retained by Grimes and GMS.  Twelve depositions were taken,

_____

[6]       "GMS" as referred to in this opinion and in the opinion on
confirmation refers to the investment brokerage firm identified in the various
pleadings as "GMS Group LLC".  In paragraph 13 of the Complaint, plaintiffs
identify "GMS Investment Advisors, Inc." as the brokerage firm of "many of the
plaintiffs".  The description of the holdings of GMS Investment Advisors in the
Complaint and of GMS Group LLC in their objections to confirmation appear to
be identical.  The difference in names has not been highlighted by any of the
parties.

including the deposition of defendant George Hager, then Chief Financial

Officer of the debtors, as well as a representative of the defendant Goldman.

Thousands of documents were produced to GMS and Grimes.

At the two-day confirmation hearings, eight witnesses, including the six

valuation experts, testified.  GMS and Grimes raised many of the issues

reflected in the complaint, including various EBITDA assumptions and

adjustments.  See In re Genesis Health Ventures, Inc., 266 B.R. 591 (D.Del.

2001).  Among the objections litigated by Grimes and GMS were the following:

1.  The good faith of the proposed plan was challenged.  The objectors
    suggested "that the plan only serves the interests of the Senior
    Lenders and the debtors' directors and officers, all of whom have
    incentive to minimize the going concern value at this time to
    enable them to capture all present and future value for themselves
    at the expense of subordinated debt and general unsecured
    creditors."  Id. at 609-10.  Based on the proofs presented, I
    concluded that the debtors had met their burden of proof to
    establish that their plan of reorganization was proposed in good
    faith.

2.  In the context of § 1129(b)(2) "fair and equitable" requirements, the
    objectors proposed that the plan violated the absolute priority rule
    because Senior Lenders were receiving more than full
    compensation for their claims.  They claimed that the reorganized
    enterprise value of Genesis and Multicare, either individually or
    combined, provided a recovery to Senior Lenders that was greater
    than 100% of their claims.  Id. at 612.  The objectors produced
    various documents and expert testimony to challenge valuations
    produced on behalf of the plan.  They specifically attacked the level
    of projected EBIDTA, and the approximate multiple to apply to
    EBIDTA to arrive at the debtors' reorganized enterprise value, as

too low.  In my decision, I rejected the opinions of the objectors'
experts as "inflated and unrealistic", while I affirmed as reasonable
the valuations offered by the plan proponents' experts.

3.      Management incentives contained in the plan were challenged as
not fair and equitable.  The distributions to management proposed
under the plan were contended to be "in essence on account of
[management's] prepetition equity interests, whereby other equity
holders will receive nothing."  <u>Id</u>. at 616.  This challenge was also
rejected.

4.      The objectors challenged the proposed merger of the reorganized
Genesis and reorganized Multicare entities, claiming that the
merger "misallocated value from Genesis to Multicare, to the
detriment of the Genesis creditors."  <u>Id</u>. at 618.  I overruled this
objection as well, concluding that "the allocation of Genesis New
Common Stock is based strictly on the relative equity values of
Genesis and Multicare on a pro rata basis, assuming the new
capital structure proposed in the plan."  <u>Id</u>. at 619.

My opinion confirming the debtors' plan was issued on September 12,

2001, and the Confirmation Order was entered on September 20, 2001.  On

September 14, 2001, Grimes filed a motion to amend the findings in the

opinion, particularly with regard to the valuation analysis.  The motion was

denied.  An appeal to the District Court was dismissed on June 14, 2002, and

Grimes' appeal to the Third Circuit was ultimately dismissed on December 16,

2002.  GMS did not appeal the Confirmation Order.

The application of res judicata, or claim preclusion, "bars a party from

litigating a claim that it could have raised or did raise in a prior proceeding in

-22-

which it raised another claim based on the same cause of action." <u>CoreStates</u> <u>Bank, N.A. v. Huls Am., Inc.</u>, 176 F.3d 187, 191 (3d Cir. 1999). <u>See also</u> <u>Board</u> <u>of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra</u>, 983 F.2d 495, 504 (3d Cir. 1992). The use of claim preclusion "avoids 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" <u>EEOC v. United States Steel Corp.</u>, 921 F.2d 489, 492 (3d Cir. 1990) (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74, 59 L. Ed.2d 210 (1979)). <u>See</u> <u>also</u> <u>General Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 157-58 (3d Cir. 2001) ("res judicata or claim preclusion is designed to avoid piecemeal litigation of claims arising from the same events"). The party seeking the application of res judicata bears the burden of showing that it applies. <u>General Elec. Co.</u>, 270 F.3d at 158; <u>United States v. Athlone Indus.,</u> <u>Inc.</u>, 746 F.2d 977, 983 (3d Cir. 1984).

Res judicata, or claim preclusion, requires:

(1) a final judgment on the merits in a prior suit involving;

(2) the same parties or their privities; and

(3) a subsequent suit based on the same cause of action.

<u>CoreStates</u>, 176 F.3d at 194 (quoting <u>Centra</u>, 983 F.2d at 504). <u>See also</u> <u>Saudi</u>

v. Acomarit Maritimes Services, S.A., 114 Fed.Appx. 449, 454 (3d Cir. 2004);

EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990); United

States v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir. 1984).


The first two elements of claim preclusion are clearly evident on this

record.  The Confirmation Order constitutes a final judgment on the merits.

Corestates Bank, 176 F.3d at 194 ("The principle of claim preclusion applies to

final orders overruling objections to a reorganization plan in bankruptcy

proceedings just as it does to any other final judgment on a claim.").  All of the

plaintiffs, as creditors of the debtors, were parties to the bankruptcy case and

are bound by the Confirmation Order under 11 U.S.C. § 1141(a) ("the

provisions of a confirmed plan bind . . . any creditor . . . whether or not such

creditor . . . has accepted the plan").  See also 11 U.S.C. § 1109(b) ("A party in

interest, including . . . a creditor . . . may raise and may appear and be heard

on any issue in a case under this chapter.").  It is noted as well that the

objector GMS, representing many of the plaintiffs herein, was a member of the

Genesis Creditors' Committee.


As to the defendants, the named Senior Lenders, including Goldman,

Mellon and Highland Capital, were parties to the bankruptcy process.  The

status of defendant George V. Hager, the debtors' Chief Financial Officer, as a

party is less certain.  Hager was not a party in interest in the debtors'

bankruptcy case.  He was deposed prior to confirmation, and testified at the

confirmation hearings.  As an important part of the debtors' management team,

Hager no doubt participated actively in the bankruptcy case in his capacity as

an officer of the debtors, but not in his capacity as an individual.  I conclude

that the named Senior Lenders were parties to the bankruptcy case for claim

preclusion purposes, but that Hager was not.


As to the third requirement for claim preclusion, whether a claim

asserted in a bankruptcy case and a later claim asserted in a separate

complaint are based on the same "cause of action," the Third Circuit has

explained:

> Claim preclusion doctrine must be properly tailored to the unique
> circumstances that arise when the previous litigation took place in
> the context of a bankruptcy case.  Difficult as it may be to define
> the contours of a cause of action in a bankruptcy setting, we
> conclude that a claim should not be barred unless the factual
> underpinnings, theory of the case, and relief sought against the
> parties to the proceeding are so close to a claim actually litigated in
> the bankruptcy that it would be unreasonable not to have brought
> them both at the same time in the bankruptcy forum.

Eastern Minerals, 225 F.3d at 337-38.  The Court explained further that

> . . . one does not get a second bite at the proverbial apple simply
> because the first bite was taken in a bankruptcy case.  See Huls,
> 176 F.3d at 202 (citations omitted). Similarly, we note that care

must be taken in determining whether the first bite was actually
taken such that it would preclude the second. <u>Huls</u> does not stand
for the proposition that nondebtors must assert all potential claims
in a bankruptcy case or be forever barred . . . .  Rather, <u>Huls</u> helps
us frame the key question that the parties agree we should ask
whenever the affirmative defense of claim preclusion is raised on
the basis of a prior bankruptcy confirmation order, namely,
whether the later claim arises from the same cause of action as a
claim that was actually asserted or interposed in the earlier
bankruptcy case and resolved in the confirmation order.

<u>Id</u>. at 339.  <u>See</u> <u>also</u> <u>In re Justice Oaks II, Ltd.</u>, 898 F.2d 1544, 1552 (11th Cir.

1990) (Where the claims raised in a subsequent complaint were already raised,

or could have been raised as an objection to confirmation, the doctrine of claim

preclusion bars the relitigation of these claims).

Here, "the factual underpinnings, theory of the case, and relief sought" of

the claim against the named Senior Lenders all confirm that the claim asserted

here "arises from the same cause of action as a claim that was actually

asserted or interposed in the earlier bankruptcy case and resolved in the

confirmation order." <u>Eastern Minerals</u>, 225 F.3d at 339.  Plaintiffs are seeking

to relitigate a cause of action that proposes a revaluation of the debtors'

enterprise to engineer a different distribution scheme.  The factual

underpinnings of this complaint, involving the alleged undervaluation of the

enterprise value of the debtors by the debtors' officer, Hager, and the Senior

Lenders to eliminate junior creditors and receive most of the ownership of the

reorganized companies, and the alleged participation by the Senior Lenders in presenting misleading and false financial information to the court in the course of confirmation hearings, are so close to the claim actually litigated at confirmation that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.  At confirmation, the objectors challenged the debtors' proposed plan on the grounds that the enterprise value of the debtors was dramatically misvalued and undervalued, that the financial information and analyses regarding valuation, particularly the projected EBIDTA used, was incorrect, and that the plan was not proposed in good faith and was not fair and equitable because the distributions impermissibly favored the Senior Lenders and afforded them a recovery in excess of 100%.

In comparing the factual underpinnings of the confirmation hearings and the subsequent complaint filed herein, I recognize that the alleged misconduct on the part of the named Senior Lenders, including control of the debtors, fraudulent manipulation of adjustments to projected and actual EBIDTA numbers, and fraudulent misrepresentations through the Debtors' management to the creditor body, was not specifically asserted at confirmation by the objectors.  The objectors contend that these allegations were not made because details of the described conduct did not come to light until after the plan was confirmed.  However, accepting as true on this Rule 12(b)(6) motion

all of the factual allegations contained in the complaint, I must conclude that the critical factual underpinnings at issue in the complaint, i.e., the correctness of the enterprise valuation of the debtors proposed by the proponents of the plan, are the same in the first and second claims. To revisit the factual underpinnings of the valuation process would be to have a second bite at the proverbial apple, and to open up the possibility of inconsistent decisions between the confirmation order and the resolution of the issues presented.

Similarly, the theories advanced in the two cases coincide. In both instances, the objectors (the plaintiffs herein) focus on the propriety of the adjustments and assumptions underlying the valuation of the debtors. Both claims theorize that due to miscalculations or improper adjustments, as asserted in the first case, or a fraudulent scheme to misrepresent, as asserted in the second case, the Senior Lenders received a greater distribution under the plan than they were entitled to receive, or more than 100% of their claim.

As to the relief sought, during the confirmation process, the objectors sought to defeat confirmation of the debtors' proposed plan and to substitute a plan that would recognize a higher enterprise value for the debtors, and would offer a reduced distribution to the Senior Lenders and an increased distribution

to the junior creditors, in particular, holders of the Senior Subordinated Notes.
In this complaint, the plaintiffs seek monetary damages against the named
Senior Lenders, in effect redistributing, at least in part, the recovery received
by these parties through the confirmed plan.

To be distinguished factually here is the <u>Eastern Minerals</u> case.  In
<u>Eastern Minerals</u>, a creditor aggressively litigated many issues in the case,
including the retention of professionals and the rejection of an executory
contract.  In connection with its objection to the sale of the debtor's assets, the
creditor attached a draft complaint seeking equitable subordination of certain
claims of affiliates of the debtor, on the grounds that the affiliates obtained
liens against the debtor's assets without any lawful basis, and that they
improperly received substantial postpetition payments from the debtor.  The
complaint did not name the debtor's sole shareholder, Mahan, as a party, but
described Mahan's conduct in allegedly preferring the affiliates over other
creditors of the debtor.  The complaint was never filed, the issues between
creditor and the debtor were consensually resolved, and there was never a final
judgment on the merits.  The debtor's liquidating Chapter 11 plan was
confirmed, and the bankruptcy case was closed.

Thereafter, the creditor filed a complaint in state court against Mahan,

seeking to recover the remainder of its claim against the debtor from Mahan by piercing the corporate veil on an alter ego theory.  The creditor alleged "that Mahan caused [the debtor] to be undercapitalized, 'pilfered' corporate opportunity, and acted to  further his own personal ends, thereby abusing corporate privilege and breaching his fiduciary duty and his duty of loyalty." 225 F.3d at 333.  The action was removed to federal district court.

In concluding that the doctrine of res judicata did not apply to bar the complaint against Mahan, the Court of Appeals focused on the third element of the doctrine, i.e. whether the same cause of action was actively litigated in the context of the bankruptcy case.

In passing, the court raised questions about whether the first two elements of res judicata, including a final judgment on the merits, and an action including the same parties on their privies, had been established.  Id. at 336 n.11.  The court noted that the creditor "never litigated any cause of action against Mahan that sought what its current claim would accomplish", Id. at 338, that the draft equitable subordination complaint sought to subordinate the claims of the affiliates, with no direct impact on Mahan, and that the issue of Mahan's personal liability for the debt due to the creditor was not raised.  Id.

In contrast here, GMS and Grimes, representing the plaintiffs in this complaint, actually litigated the same cause of action presented here.  At the confirmation of the debtors' reorganization plan, they challenged the distribution to be received by the Senior Lenders on the ground that the enterprise value of the debtors advanced by the plan proponents and supported by the Senior Lenders was "a dramatic misvaluation and undervaluation of the reorganized entity for purposes of Plan distributions."  Def's Exh. E at 2.[7]  The plaintiffs here seek merely to add additional factual bases to the allegation that the debtor was misvalued, with factual claims that the Senior Lenders fraudulently misrepresented and manipulated adjustments to the debtors' EBIDTA in various ways prior to and after the bankruptcy case was filed, which caused the "dramatic misvaluation and undervaluation" of the debtors.

Plaintiffs contend that even if the doctrine of res judicata would otherwise apply to bar this litigation, debtors' confirmed plan expressly reserves in section 10.6 the plaintiffs' right to sue the debtors and the senior creditors for "willful misconduct or gross negligence" for "any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation

---

[7]     The fact that the plaintiffs have singled out three of the Senior Lenders in this complaint, rather than naming all of the Senior Lenders, does not alter the conclusion that the same cause of action against the named Senior Lenders was actually litigated in the context of the bankruptcy case.

of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization". As the defendants correctly point out, section 10.6 is not a reservation of rights provision and it does not preserve any right to bring claims that would be otherwise barred by the plan and the confirmation order. It does not provide disgruntled creditors an affirmative right to relitigate claims barred by res judicata. It is instead a contractual protection clause designed to protect the debtors and related parties from liability in connection with the bankruptcy, the plan and its consummation, with a carve-out for conduct that is not protected, if the adjudication of liability for that conduct is not barred on some other basis.

Section 10.6 of the Plan, entitled "Exculpation", provides:

> Neither the Debtors, any Disbursing Agent, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, Mellon Bank, N.A., as administrative agent under, and any lender under, the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, nor any of their respective members, officers, directors, employees, agents, or professionals shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization,

except for willful misconduct or gross negligence.

Plaintiffs are correct that the debtors and the Senior Lenders are vulnerable to liability for their actions by operation of section 10.6, to the extent that their actions constituted "willful misconduct or gross negligence." However, Section 10.6 does not override the doctrine of res judicata where there is nothing in that section or in the plan otherwise which "expressly" reserves the cause of action asserted by the plaintiffs.  See Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002) ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding."); D&K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y., 112 F.3d 257, 261 (7th Cir. 1997) (to avoid res judicata the reservation must be express and specific); In re Kelley, 199 B.R. 698 (9th Cir. BAP 1996).  Here, while the Senior Lenders may be sued for willful misconduct or gross negligence, absent an express reservation, they may defend such a suit by asserting the doctrine of  res judicata.

The plaintiffs' last challenge to the application of res judicata to bar the complaint is the so-called fraud exception.  The plaintiffs contend that res judicata does not apply here because the defendants obtained the confirmation order by defrauding the court and the plaintiffs.  They cite to McCarty v. First

of Georgia Ins. Co., 713 F.2d 609 (10th Cir. 1983) for the proposition that

"'where plaintiff's omission of an item of his cause of action was brought about

by defendant's fraud, deception, or wrongful conduct, the former judgment has

been held not to be a bar to suit.'" Id. at 613 (quoting Christian v. American

Home Assur. Co., 577 P.2d 899, 905 (Okl. 1977)).  The Sixth Circuit in

Browning v. Levy, 283 F.3d 761, 770 (6th Cir. 2002) refined the McCarty

elements to require a showing that there was a "(1) wrongful concealment of

material facts that (2) prevented plaintiffs from asserting their claims in the

first action." See also Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)

("An exception to the general principle that lack of knowledge will not avoid the

application of res judicata rules is found in cases where fraud, concealment, or

misrepresentation have caused the plaintiff to fail to include a claim in a

former action.").  Concealment in this context requires an affirmative act or

contrivance to hinder the plaintiffs' inquiry.  "'[M]ere silence or unwillingness to

divulge wrongful activities is not sufficient.'" Browning, 283 F.3d at 770

(quoting  Helmbright v. Martins Ferry, No. 94-4089, 1995 WL 445730, *1 (6th

Cir. July 26, 1995)).

    Plaintiffs' final attempt to avoid the application of res judicata fails for

two reasons.  First, the plaintiffs do not contend that the defendants wrongfully

concealed material facts from them prior to confirmation.  Rather, the plaintiffs

contend that the documents produced by the defendants prior to confirmation
were too voluminous to review adequately, that there was insufficient time to
review the materials thoroughly, and that the materials were not reviewed to
ferret out fraud, because the prospect that fraud had been committed in
connection with management assumptions and adjustments to EBITDA was
not yet apparent.[8]  The affirmative act of concealment or contrivance is missing
in the plaintiffs' presentation.  According to the plaintiffs, most or all of the
information establishing the defendants' fraudulent conduct was actually
provided in discovery prior to the confirmation hearings, or in various required
filings with the Securities and Exchange Commission after the confirmation
hearings.  As to the discovery provided prior to the confirmation hearings, at

---

[8]     The plaintiffs do assert that the defendants wrongfully concealed
the fact that a new contract with Mariner "was executed on or about September
24, 2001, but defendants did not disclose it until October 8, 2001, 6 days after
the Court approved the Genesis bankruptcy Plan.  Genesis did not disclose the
extension of the Mariner supply contract until its 10Q for the first quarter of
2002, which was filed 4 months after the confirmation of the Plan."  Complaint
at 57, ¶ 128.  However, debtors' plan of confirmation was approved on
September 12, 2001, approximately two weeks prior to the alleged execution of
the agreement.  Second, the proposed Mariner transaction was specifically
addressed in the opinion on confirmation which recognized that the "debtors
have entered into a letter of intent to purchase APS.  If the purchase is
consummated, the potential for an increase in the debtors' EBITDA is strong."
266 B.R. at 613.  However, the "actual consummation of the transaction was
deemed too speculative for inclusion as a basis for the calculation of a forecast
EBITDA for valuation purposes."  Id.  The potential contract with Mariner was
not new or concealed, but rather a recognized and contested adjustment to
EBITDA during the confirmation process.  Plaintiffs have failed to establish an
affirmative act of concealment or contrivance on this record.

the time of the hearings, the defendants did not request additional time to review the materials and prepare their objections to confirmation. As to the SEC disclosure, the SEC filings were timely filed, and included post confirmation data. Neither the circumstances before or after confirmation justify a finding of wrongful concealment of material facts.

Second, the plaintiffs were not prevented from asserting their claims at confirmation. As noted above, their claims focused on the correctness of the enterprise valuation of the debtors. That claim was fully litigated at confirmation. The fraud exception to res judicata does not apply.

I conclude that the plaintiffs' complaint against each of the named Senior Lenders, including Goldman, Mellon and Highland Capital, is barred by the doctrine of res judicata.

IV.    Collateral Estoppel

In the alternative, the defendants contend that the doctrine of collateral estoppel, or issue preclusion, bars the plaintiffs' complaint. They allege that "the central issue during the confirmation contest was the measure of enterprise value of the Debtors, including the reasonableness of the Debtors'

fiscal year 2001 projections.  As they did at confirmation, the Plaintiffs, now

through the Complaint, have focused on the allegation that the valuation of

Genesis has been depressed."  Defs. Joint Reply at 12.  Defendants insist that

the plaintiffs should not be permitted to relitigate the issue of the debtors'

valuation simply because the plaintiffs are now asserting fraud.

Plaintiffs respond that the issues asserted in their complaint were never

previously adjudicated by the bankruptcy court.  "In confirming the Plan, this

Court made no finding as to whether defendants artificially depressed the value

of Genesis by intentionally, recklessly or with gross negligence submitting false

or misleadingly incomplete EBITDA information."  Pl. Memo in Opposition at

50.  Plaintiffs assert that "nobody challenged the data as false or manipulated."

Id.

There is no dispute that collateral estoppel principles apply in

bankruptcy proceedings.  Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S. Ct.

654, 112 L.Ed.2d 755 (1991); Brown v. Felsen, 442 U.S. 127, 139 n.10, 99 S.

Ct. 2205, 2213 n.10, 60 L.Ed.2d 767 (1979) (applying collateral estoppel to a

nondischargeability proceeding).  Where the prior judgment was rendered by a

federal court, federal principles of collateral estoppel apply.  In re Docteroff,

133 F.3d 210, 214 (3d Cir.1997); In re Jordana, 232 B.R. 469, 475 (10th Cir.

BAP 1999), aff'd, 216 F.3d 1087 (10th Cir. 2000).  To estop a party from

relitigating an issue, the movant must show that:

> (1) the issue sought to be precluded is the same as the one involved in the prior action;
>
> (2) the issue must have been actually litigated;
>
> (3) the issue must have been determined by a valid and final judgment; and
>
> (4) the determination must have been essential to the prior judgment.

In re Docteroff, 133 F.3d at 214.  See also Saudi v. Acomarit Maritimes

Services, S.A., 114 Fed.Appx. 449, 454 (3d Cir. 2004); Witkowski v. Welch, 173

F.3d 192, 199 (3d Cir. 1999).  All four elements of collateral estoppel are

apparent in this case, and serve to bar the complaint against the three Senior

Lenders and Hager.


First, the issue sought to be precluded is the same as the one involved in

the prior action, i.e. the issue of the appropriate enterprise value of the debtor.

As reflected in the opinion on confirmation, "[t]he issue raised by the objectors

[was] whether the reorganized enterprise value of Genesis and Multicare, either

individually or combined, provides a recovery to holders of claims in Class G2,

the Senior Lenders, that is greater than 100% of their claim."  In re Genesis

Health Ventures, Inc., 266 B.R. at 612.  Various valuation methodologies were

-38-

considered, with agreement among the experts, including the objectors'

experts, that the Comparable Company analysis was the most significant way

to ascertain the debtors' enterprise value in this case.  That analysis is

comprised of EBITDA and selecting an appropriate multiplier to apply to

EBITDA to arrive at enterprise value.

The plaintiffs contend that the budgeted EBITDA, including the

management assumptions underlying the projections, was not challenged at

confirmation, and that the primary focus was only on the appropriate

multiplier to be selected.  The opinion itself, in which I reviewed the objectors'

arguments challenging the budgeted EBITDA numbers presented by the plan

proponents, belies the plaintiffs' contentions.  Id. at 613-14.  I rejected the

proofs submitted by the objectors, including various documents and the cross

examination of Hager by the objectors, and accepted the reasonableness of the

management projections.  The contentions in this complaint that the fraud and

manipulation by the Senior Lenders and Hager caused the management

projections to be invalid do not alter the basic proposition that the issue of the

debtors' enterprise value raised in this complaint is the same issue litigated in

the prior action.

Secondly, the issue of enterprise value was actually litigated.  This prong

of the doctrine of collateral estoppel requires that the party against whom the issue is sought to be estopped must have had a full and fair opportunity to litigate the issue.  The plaintiffs contend here that they were deprived of such full and fair opportunity because there was insufficient time prior to confirmation to review the thousands of documents given to them shortly before confirmation, and that the documents were not reviewed with the possibility in mind that fraud had been committed prior to confirmation.  Both arguments must be rejected.  Most notably, the plaintiffs, then objectors to the debtors plan, did not object to the discovery schedule or assert at the confirmation hearing that they did not have sufficient time to review the materials.  Some concern was raised regarding the speed with which the debtors pursued the presentation of the reorganization plan, the approval of the disclosure statement, and the confirmation hearings, with several objectors contending that the proponents of the plan presented the plan in bad faith.  As I noted in the opinion, the suggestion appears to have been that in light of increases in value experienced in the healthcare industry by various companies during the last six months preceding confirmation, the deal that was consummated with the Senior Lenders, which presupposed that the Senior Lenders were undersecured, might fail if the enterprise value of the debtors continued to rise.  Id. at 609.  I declined to assign bad faith motives to the debtors for moving the case to confirmation promptly, and determined that the

plan was proposed in good faith.  Id. at 609-10.

As to the plaintiffs' contention that the documents were not reviewed with the possibility of fraud in mind, the plaintiffs cannot relitigate the same issue on this basis.  See, e.g., Liberty Mutual Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 761 (8th Cir. 2003) ("Where the first and second actions are both based on an evaluation of the same historical facts, a litigant seeking to introduce newly discovered evidence otherwise in existence at the time of the first suit may not argue that the facts have changed in the time period between the two actions in order to avoid the preclusive effect of the first decision."); Klein v. C.I.R., 880 F.2d 260, 263 (10th Cir. 1989) ("A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence."). The plaintiffs' new contention that the Senior Lenders and Hager are guilty of fraud does not present a new issue, but simply represents new factual assertions underlying the issue that was resolved in the first litigation, i.e. the issue of the debtors' enterprise value.  See Yamaha Corp. of America v. United States, 961 F.2d 245, 257-58 (D.C. Cir. 1992), cert. denied, 506 U.S. 1078, 113 S. Ct. 1044, 122 L.Ed.2d 353 (1993) ("A new contention is not ... necessarily a new issue.").

The third and fourth elements of collateral estoppel are also established here.  The confirmation order represents a valid and final judgment on the issue of the confirmability of the debtors' plan.  The determination of the debtors' enterprise value was essential to the judgment of confirmation to establish the good faith of the plan, and that the plan was fair and equitable under 11 U.S.C. § 1129(b).

I conclude that the plaintiffs' complaint must fail against the Senior Lenders and Hager because the central issue of the complaint is the correct enterprise value of the debtors at the time of the confirmation of the plan, an issue that was litigated in the context of confirmation.

## **CONCLUSION**

For the foregoing reasons, and by way of summary, I conclude as follows:

1.    As to the former debtor, Genesis Health Ventures, Inc., the plaintiffs' complaint must be dismissed as time barred under 11 U.S.C. § 1144, and, in the alternative, on the basis of ¶¶ 10.2 and 10.3 of the debtors' confirmed plan of reorganization.

2.    As to the Senior Lenders, the complaint must be dismissed on the basis of the application of defense of res judicata.  In the

alternative, as to the Senior Lenders and Hager, the plaintiffs'
complaint must be dismissed in its entirety on the basis of the
defense of collateral estoppel.

The additional arguments advanced by the defendants on their motion to
dismiss need not be considered in light of these rulings.  The defendants are
directed to submit an order in conformance with this opinion.

For the reasons expressed above, plaintiffs' complaint will be dismissed
in its entirety.

Dated:   May  3 , 2005

_____
JUDITH H. WIZMUR
U.S. BANKRUPTCY JUDGE